IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHARRON MCCLELLAN,<br><br>       Plaintiff,<br><br>  v.<br><br>SAFERENT SOLUTIONS, LLC,<br><br>       Defendant. | Civil Action No.<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Sharron McClellan ("Plaintiff"), by and through the undersigned counsel, hereby submits his Complaint and Demand for Jury Trial ("Complaint") against Defendant SafeRent Solutions, LLC ("SafeRent" or "Defendant") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681 *et seq*.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3. Defendant transacts business in this District; Defendant purposefully avails itself of the protections of this District; and Defendant regularly directs business at this District, such that personal jurisdiction is established.

## PARTIES

4. Plaintiff, Sharron McClellan, is a natural person who resides in Palm Bay, Florida, within the confines of Brevard County, Florida. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

5. Defendant, SafeRent, is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). SafeRent is incorporated in Delaware, and its principal place of business is located at 3001 Hackberry Road, Irving, Texas 75063. SafeRent can be served through its registered agent Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

6. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

8. On or about April 23, 2022, Plaintiff and his wife sold their home, and began searching in earnest for a new place to live.

9. Plaintiff and his wife have a young daughter and pet dogs, and wanted to be sure their new home had a fenced-in yard and was in a desirable location.

10. After expending a substantial amount of effort in their search, Plaintiff and his wife found a home which met their exact specifications, managed by non-party Progress Residential ("Progress").

11. Accordingly, on or about May 25, 2022, Plaintiff and his wife completed a rental application for the property managed by Progress.

12. As part of the rental application, Plaintiff and his wife were required to consent to a background check, prepared by SafeRent.

13. On or about May 25, 2022, Plaintiff and wife consented to such a background check, to be prepared by SafeRent.

14. Sadly, the following day, on or about May 26, 2022, Plaintiff and his wife were crushed when, rather than learning their application had been approved, they learned their application had been denied outright.

15. The couple was absolutely devastated and were extremely confused as well. They were told initially that the SafeRent background check would investigate whether either Plaintiff or his wife had any criminal records within the previous ten (10) years, and neither Plaintiff nor his wife had any such records.

16.     The couple contacted a Progress representative to attempt to get an explanation but were told simply to request a copy of their SafeRent report. Therefore, the couple did so.

17.     A few days later, Plaintiff received a copy of his background check, prepared by SafeRent, which he identified immediately as containing flagrantly inaccurate and offensive information.

18.     Contained within a section of Plaintiff's SafeRent report bearing the heading "MULTI-STATE PLUS CRIMINAL SEARCH REPORT," SafeRent reported two criminal records. The second of these criminal records included a conviction for an offense listed as "INJURY/RISK OF INJURY TO MINOR – **SEXUAL**."

19.     Plaintiff was shocked and appalled. Plaintiff has never been charged with a sexual crime in his life, much less a sexual crime involving a child.

20.     In reality, Plaintiff was charged with a criminal offense for an unfortunate incident involving his son in 2001, where his son was inadvertently burned by bath water which had gotten too hot. Plaintiff maintained his innocence but entered an Alford Plea, not admitting guilt but acknowledging prosecutable evidence. He served his time and has been an exemplary father, citizen, homeowner, taxpayer, and student in the time since.

21. SafeRent's reporting dredged up this terrible memory, which Plaintiff has worked diligently to move past. However, what's worse was that SafeRent's reporting was horrifyingly inaccurate. Plaintiff's crime was **in no way a sexual crime**, and SafeRent's reporting of this crime cast Plaintiff in the worst possible light.

22. SafeRent had, in fact, reported Plaintiff's actual criminal record, which was labeled "RECORD – 1 of 2." The **inaccurate record** – namely, the record referenced above "INJURY/RISK OF INJURY TO MINOR – **SEXUAL**" – was listed as a separate, second record, labeled "RECORD – 2 of 2."

23. In other words, in addition to the fact that Plaintiff had never been charged with – much less convicted of – a sexual crime involving children, SafeRent was reporting that this record was **in addition** to his actual criminal record, making it appear as though he was charged in two separate incidents.

24. Upon information and belief, criminal sexual offenses involving children are generally viewed as those which shock the conscience, and are *de facto* disqualifiers in rental applications.

25. Plaintiff was humiliated by the knowledge that representatives at Progress and SafeRent believed Plaintiff to have been charged and convicted with a sexual crime involving a child.

26. Moreover, Plaintiff was extremely ashamed and humiliated by being forced to have conversations with his wife where he had to reassure her that the crime from his past was in no way a sexual offense.

27. Upon information and belief, had SafeRent reported Plaintiff's criminal record accurately – without reporting his crime as a sexual crime involving children – Plaintiff's rental application would have been approved.

28. The weeks that followed were marked by constant stress and emotional distress on the part of Plaintiff. He and his wife continued to look for housing, but he held legitimate concerns about whether the family would find a new place to live in a timely manner.

29. During these weeks, Plaintiff lost a substantial amount of sleep. He estimates that he slept an average of only four (4) to five (5) hours of broken, disjointed sleep each night, where he would wake up multiple times. He also experience issues with falling asleep as his mind raced due to the family's housing crisis.

30. Plaintiff experienced other physical manifestations of his distress. Namely, Plaintiff found himself stress eating as a coping mechanism to try and feel better, despite his emotional distress.

31. Plaintiff also experienced marital strife in the form of frequent arguments with his wife. Plaintiff found himself mentally on edge, and frequently argued with his wife about things which the couple would never normally bicker.

32. Additionally, Plaintiff and his wife had frequent arguments about money and the family's decision-making. Specifically, the couple argued with one another about whether they should have sold their house before confirming that they had approval for a rental application.

33. While the true culprit was SafeRent's woefully inaccurate reporting, Plaintiff felt personally responsible for the precarious circumstances in which his family found itself.

34. Ultimately, after searching nonstop, Plaintiff and his wife found a replacement home and completed a second rental application.

35. This second application also required a background check, prepared by another company.

36. Upon information and belief, the other background check company did not prepare a report with inaccuracies. Accordingly, the couple was approved to move into the new home on or about June 17, 2022.

37. Plaintiff and his family were forced to spend the days following June 17, 2022 – including Father's Day, and half a day of work Plaintiff was forced to

miss on June 20, 2022 – scrambling to get the family's belongings packed up and moved into their new home.

38. While Plaintiff was thrilled to have a new home, the new place was more expensive, costing approximately $100/month more than the home which Plaintiff was denied as a result of SafeRent's reporting.

39. Moreover, the home for which Plaintiff was ultimately approved did not have a fenced-in backyard as the family wanted and had other issues. The new home's floors were not sealed, the new home draws water from a well with a water pump which Plaintiff has already been forced to fix twice since moving in. The new home has hot water only on one side of the house, has air conditioning issues, and a garage door with a broken spring.

40. Despite the fact that Plaintiff's family ultimately found a new home, the effects of the inaccurate reporting from SafeRent continue to linger. Plaintiff has found that his sleeping schedule has resume no semblance of normalcy, and he frequently finds that he either cannot sleep at all, or is up several times throughout the night.

41. Moreover, Plaintiff still holds feelings of guilt and shame for causing his family to miss out on an ideal housing opportunity.

42. According to SafeRent's website, the information provided by its "Multi-State Criminal" search is an "instant report," meaning the information is

generated instantly via a database without conducting a direct search of applicable public records.

43. Upon information and belief, there is no human component in this "instant report" process wherein a human being reviews reported records to verify their accuracy, or wherein a human being conducts direct, manual searches of public records.

44. Upon information and belief, the "Multi-State Criminal" search consists solely of SafeRent's algorithms querying a database containing criminal record information.

45. Upon information and belief, the "Multi-State Criminal" search deliberately reports purported "matches" using loose matching algorithms because it is more profitable for SafeRent to report more records in its consumer reports.

46. Upon information and belief, if a human component were involved in the "Multi-State Criminal" search, the search would be more accurate but would also be more costly for SafeRent, which is precisely why it relies on automated data instead.

47. In short, SafeRent has the ability to prepare more accurate consumer reports but chooses not to do so because doing so would impact its profitability.

48. Therefore, upon information and belief, SafeRent fails to maintain and employ reasonable procedures to assure maximal accuracy of the consumer reports and consumer information it sells to third parties as required by the FCRA.

49. SafeRent is aware its consumer reporting services are used to make significant consumer decisions concerning housing.

50. SafeRent is further aware its procedures frequently result in the reporting of inaccurate information, evidenced by SafeRent's involvement in class action lawsuits concerning its violative conduct.

51. Still, SafeRent consciously chooses to rely upon unreasonable procedures because of the high degree of profitability associated with its automated reporting as compared with a human review of consumer information.

52. As a direct result of SafeRent's conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: damage to reputation, emotional distress, loss of housing opportunity, anxiety, frustration, anger, fear, embarrassment, humiliation, sleepless nights, and wasted time.

## COUNT I
## SafeRent's Violations of 15 U.S.C. § 1681e(b)

53. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

54. The FCRA requires consumer reporting agencies, like SafeRent, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

55. SafeRent violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

56. Upon information and belief, SafeRent has been sued or received disputes from other consumers in the past who have alleged its procedures were unreasonable and violative of the FCRA.

57. Therefore, SafeRent had actual notice of its deficient procedures.

58. In this case, however, SafeRent received actual notice that its procedures were unreasonable as applied to Plaintiff.

59. It is wholly unreasonable to maintain procedures which report a consumer's criminal record inaccurately by duplicating information and misreporting information.

60. Specifically, it was wholly unreasonable for SafeRent to maintain procedures which resulted in reporting a sexual crime involving a child in Plaintiff's consumer report. Moreover, it was wholly unreasonable for SafeRent to maintain procedures which allowed for duplicative reporting which gave the appearance that Plaintiff had been charged in two separate incidents, when in fact he had not.

61.     As a result of SafeRent's failure to maintain reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

62.     SafeRent's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, SafeRent is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

63.     Alternatively, SafeRent's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, SafeRent is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

64.     In any event, SafeRent is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

65.     Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sharron McClellan, respectfully requests judgment be entered against Defendant SafeRent, for the following:

    A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

    B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

    C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

E. All pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other and further relief as the Court may deem just and proper.

Dated: August 11, 2022,    THE CONSUMER JUSTICE LAW FIRM
*/s/ Kendra Penningroth*
Kendra Penningroth, AZ Bar #037119
8245 N. 85th Way
Scottsdale, AZ 85258
E: kpenningroth@cjl.law
T: 480-626-1447
*Attorney for Plaintiff Sharon McClellan*